Please call the next case. 2-12-07-81 Jerry James v. R. G. Evans Counselor, you may proceed. This is being recorded, Justice Hudson, as well as it's being piped in. I'll have the benefit of all your arguments. Thank you, Judge. Good afternoon, Your Honors. Counsel, may it please the Court, my name is Ryan Gailey, and I represent the appellant, Jerry James. I would like to reserve three minutes for rebuttal, if I may. Like Attorney Hannigan earlier, I also attended a workers' compensation seminar, and our brilliant speaker, Justice Holdred, recommended that we start our oral argument with our best argument, because after we get going, we may get some questions, we may not get back to it. So to lead with that, my client is Jerry James. He injured his back at work in 2004, lifting a 108-pound bale of steel strapping. The causation opinion, which caused the Commission to uphold the arbitrator's decision, finding there was no causal relationship to his ongoing back condition at the time of trial, is an unfounded opinion. It's an uninformed opinion. In short, it's a terrible opinion. I do have to give credit to Dr. Zellbe at deposition. He was very honest about the shortcomings of his report. He found that our client was at MMI as of December 31st, 2004, and when asked at deposition, he said it was a date that he chose because he felt it was appropriate, despite the fact that our client had ongoing treatment after that for many years. Dr. Zellbe admitted that he was missing three years of records, which formed the basis for his opinion that our client had had no further treatment. Dr. Zellbe also found no acute change between a 2004 MRI as compared to a 1993 MRI our client had had after a prior workers' comp accident. But at deposition, he did admit that he didn't have the 1993 MRI. He'd never seen it, and there was nothing to compare it to. This formed the basis of his causal opinion. This is the opinion that the Commission in large part relied upon in denying our client benefits, and we do feel that it meets the heavy burden of manifest weight. We'd like to review whether the Commission's decision finding that our petitioner failed to prove his causal relationship between the accident and his condition of ill-being at the time of trial was against the manifest weight of the evidence. Now, on this side, we do have Dr. Zellbe's opinion, which I'll get to in greater detail. It's discrediting at deposition. But at this side, we have two exams, which were agreed upon by both the respondent and the petitioner with Dr. Ed Goldberg, who teaches at the world-renowned Rush Teaching Facility, is a back specialist, and on two occasions, with no reservation, found that our client's condition in 2007 and that his ongoing condition in 2009 was related to his original injury. As I mentioned, my client did have a prior workers' comp injury. In 1992, at a previous employer, doing a similar job, he injured his back, herniated disc at L4-5. He was released from care by Dr. Soriano in 1993 and required no further treatment for the next 11 years. During those 11 years, our client worked this heavy-duty job for IC-Web, continuing on to R.V. Evans in 1999. He also served as a volunteer firefighter, climbing up and down ladders, hauling rope. During this entire 11-year period, there was no missed time for back pain. There was no medical treatment for back pain. There is nothing in the records that supports any ongoing difficulty after his release in 1993. Respondent counsel will tell you that my client's surgery was never needed, never mentioned, until it was recommended by the agreed-upon examiner, Dr. Goldberg, in 2009. Contrary to that position, we have in the record at C-355, Dr. Rowe, who he was sent to for surgical evaluation in February of 2005, stating, in the event that he has a recurrent radiculopathy, he might be a candidate for some type of decompressive procedure. He was sent there by his pain management physician after conservative therapy had failed. Following that, Dr. Gall, his pain management physician, had said, I think he may indeed be eligible for surgery sometime. That's at C-371. Dr. Roche, following this in April of 2005, said that the patient should prohibit heavy weightlifting as long as he is nonoperative. Once he is corrected surgically, he may be able to lift 30 to 40 pounds on a regular basis. However, that would be up to the surgical team to recommend further weightlifting after surgery. And that's at C-373. The reason I'm trying to pay close attention to these dates, this is February 2005, April 2005, later in April 2005. These are all dates that respondent's IME, Dr. Zellbe, had said that our patient was no longer seeking treatment, that he was at MMI, and he didn't even have these records for his review. Additionally, he didn't have the records showing that from that April 27, 2005 period, our client underwent a total of 17 epidural injections. Most of these to be administered by Dr. Dahlberg, his pain management doctor, and that in every visit with his family doctor, Dr. Peterson, he complained of the ongoing lower back pain. The phenomenon we do see in looking at the medical records is that his radiculopathy would indeed get better in correspondence with the epidural injections. Can I interject a question? In here, you have sort of competing dueling expert testimony. Obviously, the commission relied on Dr. Zellbe's opinions that the work on the epidural injections would be more effective. The work accident only caused a temporary aggravation of a pre-existing degenerative condition. You have on your side, of course, Dr. Goldberg clearly testified contrary. So why couldn't the commission rely on Zellbe versus Goldberg? Judge, it's our position that it was so against the manifest weight of all the other evidence to go with Dr. Zellbe's opinion, especially given the fact that he admitted during deposition that his no acute change from the 93 to the 2004 MRI was a temporary aggravation. And that he was not informed by any MRI to compare them to, especially considering the fact that he admitted at time of deposition that he was missing three years of medical records, to include all of the injections performed by Dr. Goldberg over a three-year period. So you're saying that his opinion was flawed because of the lack of data supporting it. Is that what you're saying? I'm saying that his opinion was flawed, unfounded, that he didn't have the accurate resources at his disposal to make an informed opinion. I also feel that the commission relied upon that as their sole basis for disputing causation. Additionally, making a number of internal errors in the arbitrator's decision, which was affirmed by the commission, they went with Dr. Zellbe's opinion, but then went on to award medical treatment after the date that they said causation ended. Per the arbitrator's order, medical was to be paid through December 1, 2009. Yet somehow, at the time of our trial, causation had ended back in 2004, when Dr. Zellbe said it had. Now, Respondent Counsel has said that this is a windfall to our client, and that he should be happy that the arbitrator mistakenly awarded him more medical than he himself had said he was entitled to. From our position, it's not a windfall. It's a right. He was entitled to that medical because we had the whole of his medical evidence, all of his treaters, no one disputing causation until the one one-time paid IME doctor did so. With an admittedly very incomplete record. Does the commission provide any rationale for that seeming inconsistency? Not that we could find, Your Honor. A second error within the opinion is the arbitrator stated that Dr. Rowe, the initial surgical examiner, indicated that Petitioner was not a surgical candidate. And if you look to the record, the opposite of that is true. Dr. Rowe did indicate that he would be a surgical candidate if his radiculopathy did not go away. Dr. Rowe also said nothing about the client needing to incur weight loss or start an exercise regimen. Both things that the arbitrator noted Dr. Rowe did say in his opinion. A third error that the arbitrator made in the opinion is stating that Petitioner, that Dr. Goldberg himself said that the Petitioner did not require surgery and that intervention would not be due to clinical exam and his obesity. Both of these things, the opposite is true if you consult the record. Assuming all of that is true, and I think some of what you've said is well taken, I think the record bears it out. Are these structural errors? I mean, does it really go to the root of the commission's decision here? Judge, respectfully, I think it points to an inherent conflict within the decision and perhaps a lack of analysis of the arbitrator's flawed decision. And what we're asking is for this court to review it in light of all the evidence and that our position would be that the manifest weight of the evidence should lead to a different conclusion. The one sole, unconflicting, non-internally illogical piece of evidence that the respondent has is the Dr. Zellweger report that does say causation is not related, this gentleman needed to lose weight, this was a degenerative condition, despite the fact that he had 11 years with no medical treatment, despite the fact that all of his actual treaters that saw him multiple times and Dr. Goldberg, who was agreed upon by both parties, found that there was causation. Is it the number of witnesses or is it the fact, can't the commission point to Zellweger and say there's some evidence to support the decision? Zellweger is, as you alluded to, evidence to support the decision, correct? The commission didn't explain within their decision why it was that they felt Dr. Zellweger's report was greater than Dr. Goldberg's. They relied upon the flawed conclusion that Dr. Zellweger drew from his incomplete records. If Dr. Goldberg had said causation is linked, and yet he had not evaluated three years of medical records that showed evidence to the contrary, and had not even bothered to review an MRI that he was comparing another MRI to, we'd have respondent counsel up here making the same argument. It is our position that Dr. Zellweger's flawed opinion and the internal disagreements with itself that the commission had in upholding arbitrator Andrus' opinion do lead one to believe that Dr. Zellweger's report is greater than Dr. Goldberg's. And we believe that there is a manifest weight argument that could be made. To elaborate further on my client's medical history, after he saw pain management through the end of 2004, when the respondent's examiner said that he suddenly became an MMI and all further symptoms were related to a degenerative condition, he continued physical therapy from December 16th through April 28th, 2005. We saw this occurring after Dr. Zellweger had said that there's no need for further treatment. On December 28th, Dr. Roche recommended him for the surgical eval, which he was seen by Dr. Rowe in February 22nd of 2005. In March of 2005, he had his first epidural injection, to be followed by 16 more between 2005 and when he was seen by Dr. Zellweger. None of these records available for Dr. Zellweger's consideration. The continued treatment with Dr. Goldberg was due to his waxing and waning radiculopathy over the years, of which all of his treaters had said he would eventually need surgery if it was not fully resolved. When he was evaluated by Dr. Goldberg in 2009, Dr. Goldberg at that time did feel that he was a candidate for surgery, writing in his final note, I do believe that his condition of ill-being is from the accident of 2004. He was treated appropriately during the course of the years, but his symptoms have been progressive. He has had no intervening trauma. This is a doctor at a teaching facility who is not typically an IME doctor, who was agreed upon by both counsel, coming up with the opinion that there is a causal relationship. And in addition to that, he had the benefit of all the records. He had three additional years of treatment that Dr. Zellweger either did not consider, did not see fit to obtain, or that respondent counsel kept from him. So in our mind, that is a much superior opinion, and it is worthy to have been given much more weight by the commission, and it speaks to the manifest weight of the evidence. If you go through the records. Do you have evidence that the respondent's counsel deceived the doctor and didn't give him all the records? We do have the doctor stating at deposition that he was not given any of the Dr. Goldberg nor the family doctor, Dr. Peterson, records for a period of time from 2005 to 2009. Do you know that they kept them? I can't account for their missing, Judge. I listed it as among a number of possibilities for the reason why the doctor wouldn't Those are good kind of possibilities, a list and a brief accusing your opponent of impropriety? Or do you think that we gloss over that? If it's taken as an accusation, I apologize. It depreciates your position when you do it. I wouldn't do it again if I were you. Understood, Judge. If I could return to the facts of the matter at hand. Your time is up. Thank you, Judge. Good afternoon, Your Honor. Naturally, we feel that the arbitrator commission and the circuit court were correct in their decision and that a clear and obvious conclusion is not readily apparent, as the petitioner argues. As this court knows, whether medical expense is necessary is a question of fact for the commission. The commission is the finder of fact, and it's the commission's duty to assess the evidence and the credibility of said evidence, and deference should be given. What the petitioner is doing here today is asking this court to reweigh the evidence that was presented to the commission. This cannot be done without going against the standard of review. The exact arguments that are made today were made to the commission, and the commission rejected them. The only question here should be whether the findings made by the commission are supported by the evidence, and the answer is emphatically yes. The commission's decision may not be perfect, but it is supported by the evidence. There are six different basis that the commission gives in its decision for its reasoning. The first is a significant preexisting condition. As counsel said, there was a preexisting injury in 1992, a back injury with pain radiation. Testing showed narrowing at L4 to L5, disc herniation, disc desiccation, and spinal stenosis. There was a flare-up in 1996 without an injury, and at this time, again, there was noted that there was a degenerative condition. Severe degenerative change was shown on the x-rays taken the day after this accident. All of the doctors that have seen the petitioner agree that the petitioner has a degenerative condition, including Dr. Goldberg, the petitioner's, who is mainly relying on. The second basis is that the petitioner was obese. At the time that Dr. Zelby saw the petitioner, he was 67 inches tall and 259 pounds. At least four treaters, Dr. Zelby, physical therapist Redman, Dr. Peterson, and Dr. Eller, used the word obese. Dr. Goldberg did testify that the petitioner was overweight, and Dr. Roche said that the petitioner needed to lose weight. He was repeatedly told to lose weight, to join a health club, to do home exercises. That the obesity was a constant aggravation to the spine, as opined by Dr. Zelby, and both Dr. Zelby and Dr. Eller, who is not the respondent's expert, said that the petitioner was a non-surgical candidate due to his weight. Counsel, let me ask you this. Obviously, opposing counsel recognizes Dr. Zelby's testimony, but he says in response, well, wait a minute, it's flawed. Yes, he says this, but he's missing records. An expert's witness's testimony is only as good as the data on the music to support it. So what's your response to that? In response to that, it's basically incorrect. Dr. Zelby testified that he reviewed Dr. Goldberg's 2007 report. If you look at Dr. Goldberg's 2007 report, he details every visit from 2005 until 2007 when he sees him. Dr. Zelby also said that he obtained a complete history from the petitioner, and this was in 2009. He also, right in his report, says his treatment over the past five years has included 17 epidural steroid injections. Now, counsel has said that Dr. Zelby didn't know anything about these. It's specifically noted right in his report. He also referenced the ongoing complaints spanning five years. His report walks through the prior treatment, including a 2006 MRI. So while he may not have had the exact records and know the exact records and dates, he did know that the petitioner had continuing treatment. As far as the reference as to not reviewing the MRI from 1993, Dr. Goldberg said the same thing, that this MRI, the actual study was not available. They both looked at the reports. Also, Dr. Zelby did not testify that this lack of these records would change his opinion. He did know about this ongoing treatment, as you will see in his report. He had the pertinent information, and he found that the pain, the current condition of the petitioner, was from a degenerative condition aggravated by his obesity. And further, this argument, this exact same argument that Dr. Zelby was so unaware of everything going on was presented to the commission. And the petitioner can sit here and try to poke holes in this testimony, but this is for the commission to decide. Someone needs to resolve these issues, and this is for the commission to do. And this argument goes to the weight of the evidence, and Dr. Zelby's report does support the commission's decision. If the commission bought into Dr. Zelby's opinions, how do you explain them awarding medical that was incurred on September the 28th of 2009? Well, I think that the main thrust of the 19B petition was prospective care. We do feel that would have been an issue that we could have appealed, but we chose not to. I think that the commission obviously disagreed that the injuries were resolved in four months, but that they found definitively that the surgery was not related to this accident, but instead to the preexisting degenerative condition. And I think that that's within the commission's discretion. They can agree with one aspect of Dr. Zelby and not with another, and I think that's what was done here. And like I said, the commission had numerous other bases for their decision, including the resolution of the radicular pain by 2005. In January 2005, he was 100% pain-free from all radicular symptoms. Also, when he saw Dr. Goldberg the first time, which was agreed upon, the 2009 consult with Dr. Goldberg was at the petitioner's attorney's request. I think that was misstated earlier. In 2007, there was no radicular pain again. There were other physicians who said he was not a surgical candidate. Dr. Eller said no surgery, because there are bad results for patients who are obese. With central disc herniation, they almost uniformly have disappointing results. This is consistent with what Dr. Zelby said. Dr. Goldberg in 2007 says he wasn't a surgical candidate. Dr. Soriano reviewed the petitioner's records, declined to even see the petitioner because he said that he wasn't a surgical candidate. And Dr. Rowe in February 2005 said that further non-surgical care was warranted. I get the petitioner saying that some of these doctors said that he might need this surgery in the future. This is all speculative. None of these doctors said at the time that they saw him, yes, he needs the surgery. Yes, he will need it here. Further, surgery in the future is consistent with degenerative changes that progressively get worse. And this is what Dr. Zelby has also testified to. Also, another basis that the commission looked at was the fact that there was no treatment from September of 2007 through May of 2008. It was during this period in November of 2007 that the petitioner left and went to a new job. It was almost two years after he went to his new job that he saw Dr. Goldberg again. And I think that that was also a basis for the commission's decision. Dr. Zelby's opinions regarding the causation. He said the petitioner is morbidly obese based on the height and weight measurements he took. The petitioner has a history of degenerative changes. The current condition was related to these degenerative changes which were aggravated by the obesity. His episodic complaints were consistent with the natural history of degenerative condition. And the treatment was related to this. He recommended, like Dr. Eller, weight loss and home health exercises. He, again, like Dr. Eller, recommended weight loss and home health exercises. And he didn't recommend surgery because there would be poor results because he was an obese patient. There are a few other inconsistencies that the petitioner touched on. He discussed that there are a few statements by the arbitrator that are inconsistent with the record. These alleged inconsistencies are either irrelevant or incorrect. The commission said that Dr. Rowe indicated the petitioner was not a candidate for surgery. And the petitioner has contended that's not true. However, that's exactly what Dr. Rowe said at the time that he saw the petitioner. He did say he might be a surgical candidate in the future, but not at the time of treatment. The commission also said that Dr. Goldberg said that the petitioner was obese. We agree that Dr. Goldberg did not say this. He did say in his testimony that he was overweight, and I don't feel that this distinction is reversible error. Further, it's clear from the record that the petitioner was obese, as indicated by Zellbe, Rebman, Peterson, Eller. Moreover, as stated by Dr. Zellbe, the petitioner's weight for his body size put a strain on his spine that it wasn't designed to withstand, regardless of the classification that was given. The commission's decision is clearly supported by the record. The petitioner is simply asking this court to improperly re-weigh this evidence. The commission unanimously affirmed the arbitrator's decision. The circuit court affirmed the commission's decision, and we would request that this court affirm the commission's decision as well. Thank you. Counsel, you may reply. Thank you, Your Honors. We submit again that the commission erred in finding Dr. Zellbe's opinion to be of controlling weight as it is based on incomplete or incorrect information. It is true that Dr. Zellbe did have and consult Dr. Goldberg's report. However, he did not have the records that Dr. Goldberg had, specifically detailing the continued lower back pain, radiculopathy, consistently across this period of time. And Dr. Zellbe, when asked during deposition, said specifically no, when he was asked whether Mr. James had symptoms of radiculopathy at all between 2005 and 2008. When he was asked during deposition whether our client had been on ongoing restrictions this whole time, he said that he was not aware of. But he is still on Dr. Rocha's ongoing 20-pound weightlifting restriction as of his time of exam with Dr. Zellbe. Dr. Zellbe did not have these records. His opinion was of controlling weight in this case. That, coupled with the additional inconsistencies by the arbitrator and affirmed by the commission, show that this is a confused decision, and that they did maybe a blend of saying, we don't think Zellbe's opinion is perfect, we're going to give you some of the medical care. What we would submit is that Dr. Ed Goldberg's opinion should have been given controlling weight, that the treatment we had requested should have been approved. And I'd just like to underline again that this is an individual who had had no treatment for 11 years. He had a 15% man as a whole disc herniation in 1992, was released by Dr. Soriano a year later, sought no treatment, worked a heavy job lifting bales of steel and other items as a warehouse worker, served as a volunteer firefighter. He hurt his back at work. The accident is undisputed. He had continuous ongoing care from the time of the accident to the time of trial. None of this is disputed. What is disputed by us is the legitimacy and the weight given to Dr. Zellbe's opinion. We would ask for Dr. Goldberg's opinion to be given controlling weight and for this matter to be overturned. Thank you.